# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JASON J. TYSON,

                        Petitioner,

v.

UNITED STATES OF AMERICA,

                        Respondent.

Case No. 17-CV-1274-JPS

**ORDER**

On September 21, 2017, Jason J. Tyson ("Tyson"), a federal prisoner, filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, asserting that his conviction and sentence were imposed in violation of the Constitution. (Docket #1). The motion has been fully briefed and, for the reasons stated below, it will be denied.

**1.     BACKGROUND**

Tyson is in federal custody serving a prison sentence for possessing a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). During pretrial proceedings, Tyson filed a motion to suppress the firearm, his statements, and other evidence obtained by law enforcement. In the motion, Tyson argued that the stop by police officers wherein they obtained this evidence was illegal either as an arrest or a *Terry* stop. After conducting an evidentiary hearing, the assigned magistrate judge, Judge William E. Duffin, recommended denial of Tyson's motion. That recommendation was later adopted by the district court without objection from Tyson.

Thereafter, pursuant to a written plea agreement with the government, Tyson entered a plea of guilty to the indictment. The plea

agreement allowed Tyson to preserve the suppression issues for appeal. Subsequently, the court sentenced Tyson to a term of imprisonment of sixty-two months—fifty for the instant offense and twelve more for a related revocation proceeding disposed of in the same sentencing hearing. Tyson appealed, but his appellate counsel raised only an issue related to the Sentencing Guidelines, not the suppression issues. *See United States v. Tyson*, 863 F.3d 597, 599 (7th Cir. 2017). The Seventh Circuit affirmed Tyson's sentence. *Id.*

**2. ANALYSIS**

In the present case, the Court permitted Tyson to proceed on the following two claims, both for ineffective assistance of counsel, in violation of the Sixth Amendment.[1] First, Tyson contends that he had meritorious objections to lodge against Magistrate Duffin's recommendation on his suppression motion, yet his trial counsel failed to object. Second, Tyson alleges that his appellate counsel refused his request to raise the preserved suppression issues on direct appeal because she believed the arguments lacked merit.

Courts apply the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), to evaluate the effectiveness of counsel both at trial and on appeal. *See Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015). First, the movant must show that his counsel's performance was deficient because it "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. Second, he must show that the deficient performance prejudiced his defense, which means that "there is a

---

[1]The Court did not allow Tyson to proceed on his other claim, that the government somehow breached the plea agreement by appellate counsel's failure to appeal the suppression ruling. (Docket #2 at 4–6).

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The *Strickland* standard is "highly deferential to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (citation and internal quotations omitted). There is a "strong presumption" that counsel's decisions constitute reasonable litigation strategy. *Strickland*, 466 U.S. at 696; *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 2005) ("[B]ecause counsel is presumed effective, a party bears a heavy burden in making out a winning claim based on ineffective assistance of counsel."). The Court will address the allegations Tyson makes against his trial attorney, then those lodged against his appellate counsel.

### 2.1 Tyson's Trial Counsel Was Not Ineffective

To establish ineffective assistance of trial counsel in the context of a complete failure to file a suppression motion, a petitioner must prove that the motion would have been meritorious. *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005); *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). Here, of course, Tyson's counsel did in fact file a motion to suppress. The problem is that she did not file objections to the magistrate judge's report and recommendation that the motion be denied. Yet counsel is not required to engage in futile litigation. *See Carter v. Douma*, 796 F.3d 726, 735 (7th Cir. 2015); *United States v. Hernandez-Rivas*, 348 F.3d 595, 599 (7th Cir. 2003). Tyson must establish a reasonable probability that filing such objections would have produced a different outcome. As explained below, the objections Tyson says he wanted to make would not have sufficed.

### 2.1.1 The Magistrate's Decision

Before evaluating Tyson's desired objections to the magistrate's decision, the Court must briefly review that decision, issued by Magistrate Judge William E. Duffin. Magistrate Duffin, who presided over an evidentiary hearing and heard testimony from several witnesses, found the facts as follows:

> At around 1:37 a.m. on September 13, 2014, Police Officer Michael Destefanis, who testified at the evidentiary hearing, and his partner heard six gun shots while performing a traffic stop on the 900 block of North 26th Street in Milwaukee, Wisconsin. The gun shots appeared to come from approximately 100 feet away to the northwest and around the corner of a local tavern, Rickey's on State. Both officers "metered the corner," a term meaning to tactically view around a building.
>
> Twenty-five to thirty seconds after hearing the gun shots, the officers turned the corner and saw one only one person: a man, later identified as Tyson, wearing a black hooded sweatshirt and black pants, walking eastbound in front of Rickey's toward the officers. Officer Destefanis commanded Tyson at gunpoint to put his hands up and commence the surrender position; Tyson complied. The officers handcuffed Tyson, searched him for weapons and found none, and placed him in a squad car. Officer Destefanis then noticed "several shell casings[,] one unspent round, and also a slug from one of the shots that w[as] fired."
>
> Sergeant Richard Hoffman ("Hoffman"), who also testified at the evidentiary hearing, arrived on the scene four or five minutes after the gun shots were fired. He was informed by other officers of the incident and that a person of interest had been detained. Sergeant Hoffman proceeded to search for additional casings, blood, and bullet holes, among other evidence.

He came upon a parked blue minivan and inspected the interior of the vehicle with his flashlight. Protruding from beneath the front passenger's seat was a black t-shirt and a black 1911-style pistol. The gun was consistent with the caliber of the casings found on the ground. The pistol was in the locked-back position—a position that is executed either manually or by the user expending all of its rounds. Based on Sergeant Hoffman's experience, the latter is more likely when a firearm is in a vehicle. Sergeant Hoffman pointed out the firearm to Officer Miles Kowalik ("Kowalik") and told him that he thought the gun was the one from which the shots were fired. He then opened the minivan's unlocked door to search the rest of the vehicle.

Officer Kowalik was the third witness to testify at the evidentiary hearing. After Sergeant Hoffman called him over to observe the firearm, Officer Kowalik contacted the dispatcher to learn the vehicle's owner and registration. He was told that the minivan was registered to Tyson's residence. Ten minutes after arriving on the scene, Officer Kowalik and another officer entered Rickey's to question potential witnesses and to view video footage from an outside security camera. Within twenty minutes after arriving on the scene, Officer Kowalik viewed the security footage. Officer Kowalik informed Sergeant Hoffman that the video, although of poor quality, showed Tyson wearing a black hooded sweatshirt, black jeans, and black shoes and wielding a black cloth and firearm in one hand. Tyson walked from the minivan eastbound to the front of Rickey's and fired several rounds. Tyson briefly returned to the minivan, and then began walking eastbound a second time when the officers arrived and commanded him to execute the surrender position.

Sergeant Hoffman instructed Officer Kowalik to arrest Tyson for the crime of endangering safety by use of a dangerous weapon. The decision to arrest Tyson was based on the following facts: Tyson's close proximity to the shots fired; the fact that he was coming from the direction where the firearm was found; the firearm's locked-back position

indicated that all of its rounds had been expended; Tyson appeared to match the description of the man in the video; and the minivan was registered to Tyson's residence. The computer assisted dispatcher ("CAD") report indicates that Tyson was taken into custody at 2:12 a.m. Tyson was transported to the district police station at 2:42 a.m.

*United States v. Tyson*, 14-CR-231-RTR (E.D. Wis.), (Docket #23 at 2–4).[2]

Tyson offered three grounds for suppression. First, he argued that his initial detention by Officer Destefanis was actually an arrest, and that no probable cause for an arrest existed at that point in time. Second, he asserted that even if the initial detention was not an arrest, Officer Destefanis did not have reasonable suspicion to stop him. Finally, he contended that there was no probable cause to arrest him for being a felon in possession of a firearm.

Ordinarily, an individual may not be detained without a warrant unless police have probable cause to believe the person committed a crime. *Bailey v. United States*, 568 U.S. 186, 192 (2013). One exception is when police conduct a brief investigatory stop, known as a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1 (1968). To conduct a *Terry* stop, police must have a "reasonable suspicion that criminal activity is afoot." *Matz v. Klotka*, 769 F.3d 517, 522 (7th Cir. 2014). Reasonable suspicion is more than an "inchoate and unparticularized suspicion or hunch" but less than "probable cause and. . .considerably less than preponderance of the evidence." *Illinois v. Wardlow*, 528 U.S. 119, 123–24 (2000). It requires "'some minimal level of objective justification' for making a stop," based on the totality of the circumstances. *United States v. Sokolow*, 490 U.S. 1, 7

---

[2]Magistrate Duffin's citations to the record were omitted from the Court's quotation, as they are unnecessary. Several other typographical alterations were made to enhance readability.

(1989) (quoting *INS v. Delgado*, 466 U.S. 210, 217 (1984)). "There is no bright-line that separates a *Terry* stop from a formal arrest. The distinction hinges on the intrusiveness of the detention, which is a 'highly flexible and highly fact-intensive' inquiry." *Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008) (internal citation omitted) (quoting *United States v. Stewart*, 388 F.3d 1079, 1084 (7th Cir. 2004)).

Applying these principles, Magistrate Duffin concluded that Destefanis and his partner engaged in a lawful *Terry* stop when they detained Tyson. First, the gun shots gave them reason to believe that a crime had just occurred. Tyson was the only person in the vicinity, providing a reason to stop him even though he did not exhibit any suspicious behavior at that moment. *See Leaf v. Shelnutt*, 400 F.3d 1070, 1091 (7th Cir. 2005) ("[T]here could. . .be circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot.").

Second, although a close call, the magistrate concluded that the manner of the officers' stop was reasonably related to the circumstances giving rise to it. *Terry*, 392 U.S. at 20. In other words, the officers' stop did not transform into an arrest simply because they pointed their weapons at him, handcuffed him, searched him, and put him in the squad car. These actions brought the stop close to the line between a *Terry* stop and an arrest, but Magistrate Duffin found that in light of the danger of recent gunshots by an unidentified person just around the corner from the officers, at night and in a high-crime area, their actions did not cross that line. *Matz*, 769 F.3d at 524–25; *Jewett*, 521 F.3d at 824 (in differentiating between an investigatory stop and an arrest, "the touchstone is reasonableness: Were the officer's actions reasonable in light of all the

circumstances?"). Thus, Destefanis, who acted upon his fifteen years of experience as an officer, had sufficient grounds to temporarily detain Tyson in the manner he did to ensure that the officers could preserve the integrity of the evidence, control the movement of the only person on the scene, and protect Tyson from any additional gun fire. Nor was the magistrate convinced that Tyson's 35-minute detention transformed into a *de facto* arrest by virtue of its length, as the Seventh Circuit has found far longer detentions to not violate that rule, and there was no evidence that the officers were not conducting their investigation diligently during that time. *United States v. Bullock*, 632 F.3d 1004, 1015 (7th Cir. 2011); *Jewett*, 521 F.3d at 827 n.8.

Next, Magistrate Duffin found that Hoffman had probable cause to order Tyson's arrest. "Probable cause exists if at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed. . .an offense." *Ramos v. City of Chicago*, 716 F.3d 1013, 1018 (7th Cir. 2013) (internal quotations and ellipses omitted). Probable cause does not require "demonstrating that it is more likely than not that the suspect committed a crime." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). "So long as the totality of the circumstances, viewed in a common sense manner, reveals a probability or substantial chance of criminal activity on the suspect's part, probable cause exists." *United States v. Parra*, 402 F.3d 752, 764 (7th Cir. 2005). The court reviews the evidence known by the officer ordering Tyson's arrest at the time he ordered the arrest. *Tangwall v. Stuckey*, 135 F.3d 510, 517 (7th Cir. 1998) (An "arrest is proper so long as the

knowledge of the officer directing the arrest, or the collective knowledge of the agency he works for, is sufficient to constitute probable cause.").

The magistrate noted that at the time of the arrest, Hoffman knew that Tyson was in the same vicinity from which the shots appeared to come, that Tyson was apprehended while walking from the direction where the firearm was found, that the minivan, containing a 1911-style pistol and black cloth, was registered to Tyson's mother, that the firearm's locked-back position indicated that that the firearm had likely expended all of its rounds, and that Tyson matched the description of the man in Rickey's security camera footage. Given the facts and circumstances within Sergeant Hoffman's knowledge, said Magistrate Duffin, a prudent person could reasonably conclude that Tyson committed the crime for which he was arrested. Moreover, it does not matter that Tyson was arrested for endangering safety by use of a dangerous weapon, in violation of Wis. Stat. § 941.20(1)(a), but was ultimately charged with being a felon in possession of a firearm, in violation of federal law. *Ramos*, 716 F.3d at 1018 ("[W]e have repeatedly held that the offense for which probable cause exists need not be the subjective offense for which the officer was conducting the arrest.").

Finally, the magistrate observed that even if Tyson was right about the unlawful search and arrest, he had not sufficiently identified what evidence he wanted to have suppressed. Once a seizure is deemed "illegal, it must then be determined 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *United States v. Fields*, 371 F.3d 910, 915 (7th Cir. 2004) (quoting *Wong Sun v.*

*United States*, 371 U.S. 471, 483 (1963)). Tyson stated that he wanted "to suppress all physical evidence obtained by the officers as the fruits of an unlawful seizure." This left the magistrate confused—did Tyson want the bullet casings suppressed, or the video footage, or the gun? Not only did he not make this request sufficiently clear, neither did he explain how any of that evidence flowed from the allegedly unlawful seizure.

### 2.1.2 Tyson's Sought-After Objections

Tyson assigns several errors to the magistrate judge's ruling which he believes should have been addressed in an objection lodged with the district court. All are without merit.[3]

First, Tyson asserts that Magistrate Duffin erroneously concluded that he had failed to identify what evidence he thought should be suppressed. Tyson says that his amended motion to suppress clearly identified such evidence as his statements to the police and the "physical evidence, gathered as fruits of both a warrantless search. . .and unlawful arrest." (Docket #5 at 3). Tyson argues that in an objection he could have linked the statements and the physical evidence by showing that the officers used his statements that he lived at the same address that was

---

[3]In his petition, Tyson also alleges that trial court counsel suffered from a conflict of interest, citing *Christeson v. Roper*, 135 S. Ct. 891 (2015). In *Christeson*, a capital case, the Supreme Court found a conflict of interest where an indigent defendant's counsel's interest in avoiding damage to his own reputation was at odds with his client's strongest argument—that the same counsel had abandoned him. *Id.* at 894. Here, Tyson's counsel was not faced with a situation in which objecting to the magistrate's suppression ruling would require her to impugn her own performance. Thus, *Christeson* has nothing helpful to say about this case. It appears Tyson cited it for the proposition that attorneys can abandon their clients, but this does not meaningfully advance his claim, nor is it the holding of *Christeson*.

listed on the van's registration to make a connection to the shooting, which then led the officers to search the van and discover the firearm. *Id.*

Tyson's broad view of the evidence that flowed from the allegedly unlawful conduct is not supported by the record. The testimony at the evidentiary hearing before Magistrate Duffin established that the officers matched the registration of the van to Tyson's identification card. Moreover, inside the van officers observed a black T-shirt consistent with the black cloth held by Tyson in the surveillance video obtained from the tavern, and a pistol in a lock back position signifying that rounds had been spent. Ultimately, officers possessed multiple pieces of evidence connecting Tyson to the van containing the firearm which, in turn, they believed was Tyson's. Thus, his contention that only his statements linked him to the van is incorrect, and there could be no downhill stream of suppression starting from those statements.

Tyson's second assertion of error is that during the period for briefing an objection to the report and recommendation the Seventh Circuit's decision in *United States v. Smith*, 794 F.3d 681 (7th Cir. 2015), came down. Tyson claims that the case is factually analogous to his and, if considered by the district court during its *de novo* review of Magistrate Duffin's report, would have required suppression of the evidence against him. (Docket #5 at 4).

Yet *Smith* offers Tyson no relief. There, two bicycle patrolmen were investigating gunshots they had heard. 794 F.3d at 683. Upon arriving in the area from which they believed the shots had occurred—one block from where they heard the shots—the officers observed a man exit an alley on one side of the street (but not from the direction which the gunshots had reportedly been fired), and cross towards an alley on the

other side of the street. *Id.* Officers stopped him, and the Court of Appeals found that this encounter was a seizure for which the police admittedly had no reasonable suspicion or probable cause. *Id.* at 684.

Tyson's case is nothing like *Smith*. First, the question here is not whether Tyson consented to be stopped. He clearly did not. The question is whether the officers in this case, faced with the particular circumstances confronting them, had reasonable suspicion of criminal activity sufficient to support a *Terry* stop. Magistrate Duffin concluded that they did. As a result, whether Tyson consented to the stop is irrelevant.

Further, while the government in *Smith* conceded that there existed no reasonable suspicion to support the stop in that case, here Magistrate Duffin correctly found that the *Terry* stop was proper. Tyson was the only person in the vicinity after a series of gun shots just around the corner from the officers' position a few seconds prior. Shell casings were found around the corner from whence he and the gun shots came. Ultimately, officers located a minivan on the street near Rickey's registered to Tyson's address. The van contained a firearm which appeared to have been recently discharged, and a black T-shirt much like the cloth depicted in the surveillance video obtained from Rickey's. Although of poor quality, the video obtained from Rickey's also depicted Tyson wearing a black hooded sweatshirt, black jeans, and black shoes and wielding a black cloth and firearm in one hand. Tyson was attired in this outfit. After approximately thirty-five minutes of investigation, Tyson was placed under arrest. Thus, considering the legal and factual dissimilarities between his case and *Smith*, Tyson's claim that *Smith* would have provided relief is without merit.

Finally, Tyson believes an objection to the magistrate's decision would have permitted him to raise the claim that Hoffman violated his Fourth Amendment rights by peering into the van without probable cause for a search. (Docket #14 at 2). Moreover, according to Tyson, even if Hoffman had seen the gun in plain view, he could not assume it was unlawfully possessed, as Wisconsin allows for concealed-carry of firearms. *Id.* at 2–3.

This claim has been waived, however, as Tyson did not raise it until his reply in support of his petition. Although this Court must construe *pro se* filings liberally, including in the context of habeas petitions, *Coulter v. Gramley*, 93 F.3d 394, 397 (7th Cir. 1996), in this instance he never mentioned Hoffman's search of the van as an issue of concern until it was too late for the government to offer a response. Under these circumstances, the Court need not consider an additional argument raised for the first time in a reply brief. *See Wilson v. Giesen*, 956 F.2d 738, 741 (7th Cir. 1992) (*pro se* prisoner waived argument on appeal by failing to raise it until the reply brief); *Zambrana v. United States*, 790 F. Supp. 838, 843 (N.D. Ind. 1992) ("Reply briefs are an improper vehicle for presenting new arguments" in a habeas proceeding). Moreover, the claim is frivolous, since "[t]here is no legitimate expectation of privacy. . .shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." *Texas v. Brown*, 460 U.S. 730, 740 (1983); *United States v. Williams*, 495 F.3d 810, 815 (7th Cir. 2007). There was nothing improper about Hoffman's peering into the van and seeing what was in the readily visible areas of the passenger compartment.

None of the objections Tyson wishes his counsel had raised in the district would have had any reasonable possibility of success in overturning the magistrate's recommendation. Consequently, his trial counsel was not ineffective for failing to raise such objections.

### 2.2 Tyson's Appellate Counsel Was Not Ineffective

Tyson's other claim in this proceeding is that his appellate counsel ignored his request to appeal the preserved suppression issues. Tyson reports that appellate counsel told him the issues would not make any difference in the appeal. (Docket #1 at 4).

Under the *Strickland* performance prong, appellate counsel's performance is constitutionally deficient if counsel fails to appeal an issue that is obviously and clearly stronger than the claims counsel did raise on appeal. *See Makiel*, 782 F.3d at 898; *Blake v. United States*, 723 F.3d 870, 888 (7th Cir. 2013). Appellate counsel need not raise every non-frivolous claim, but should select among claims to maximize the likelihood of success on appeal. *See Smith v. Robbins*, 528 U.S. 259, 288 (2000); *Makiel*, 782 F.3d at 897. To satisfy the *Strickland* prejudice prong, the movant must show that there is a reasonable probability that the issues appellate counsel did not raise would have changed the outcome of the appeal. *See Johnson v. Thurmer*, 624 F.3d 786, 793 (7th Cir. 2010).

As explained at length above, appellate counsel was right in refusing to raise the preserved suppression issues. They were without merit and there is no reasonable probability that Tyson would have obtained relief from the Seventh Circuit had he raised them. And Tyson makes no attempt to argue that the suppression issues were obviously stronger than the other issues appealed; he simply assumes as much. As

such, the Court cannot conclude that Tyson's appellate representation was constitutionally deficient.

Additionally, while the government seems to think there is a problem here under *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Court detects none. That case involved the complete forfeiture of an appeal by counsel's failure to file a notice of appeal. Prejudice was presumed where no appellate proceeding was had, regardless of whether the proceeding would have been fair or inured to the defendant's benefit. *Bednarski v. United States*, 481 F.3d 530, 535 n.3 (7th Cir. 2007). In Tyson's case, because appellate counsel did not raise the suppression issue, the government believes an evidentiary hearing is needed to determine whether counsel's reasons for her decision were defensible. (Docket #12 at 9–10).

The Court need not convene a hearing in this case, because no presumption of prejudice arises. Here, unlike *Flores-Ortega*, Tyson did have an appeal. His counsel simply refused to raise the unmeritorious suppression issues.

Moreover, the fact that they were preserved in the plea agreement says nothing of their merit. That was merely part of the deal Tyson wanted. Tyson seems to think that this provision of the plea agreement mandated that the suppression issues be appealed, *see* (Docket #1 at 6), but this is not true. Counsel are always able, and indeed expected, to exercise their professional judgment in presenting arguments to the appellate courts. *See Vinyard v. United States*, 804 F.3d 1218, 1228 (7th Cir. 2015) (*Flores-Ortega* only applies to cases where the attorney's errors "denied [the defendant] access to the appeal process altogether"); *Franks v. Lindamood*, 401 F. App'x 1, 6 (6th Cir. 2010) (although *Flores-Ortega* requires an attorney to file a notice of appeal when requested, "a

defendant has no right to have his attorney carry out every other request he makes, without regard to whether the request is meritless or frivolous"). Thus, the Court can dispose of Tyson's claim against appellate counsel without the need for a hearing.[4]

3. **CONCLUSION**

For the reasons stated above, the Court finds each of Tyson's claims to be without merit, and his motion to vacate his sentence must be denied.

Under Rule 11(a) of the Rules Governing Section 2255 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), Tyson must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). In light of the well-settled principles governing the disposition of Tyson's claims, as outlined above, the Court cannot fairly conclude that reasonable jurists would debate whether his motion should be decided

---

[4]The Court notes that the rule in *Flores-Ortega* also has no effect on trial counsel's failure to file objections to Magistrate Duffin's report and recommendation. Unlike *Flores-Ortega*, Tyson had an adjudication of his suppression theories. His counsel simply refused to object to the magistrate judge's determinations thereon. Indeed, if prejudice is not presumed even in cases of a complete failure to file a suppression motion, *Kimmelman*, 477 U.S. at 384, then "it is difficult to fathom how a failure to object to a report and recommendation could constitute *per se* ineffective assistance," *Mathis v. United States*, No. 2:05-CV-149, 2007 WL 4290543, at *4 (E.D. Tenn. Dec. 4, 2007). Thus, the matter turns on whether Tyson's objections would have succeeded, and the above discussion shows this is not so.

differently; as a consequence, the Court must deny a certificate of appealability to him.

Finally, the Court closes with some information about the actions that Tyson may take if he wishes to challenge the Court's resolution of this case. This order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within thirty days of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See id.* 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *Id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Accordingly,

**IT IS ORDERED** that Tyson's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Docket #1) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**; and

**IT IS FURTHER ORDERED** that a certificate of appealability be and the same is hereby **DENIED**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 30th day of January, 2018.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge